been required to apply the reasonable doubt standard, it may have found differently. Thus in deciding Winship in favor of that defendant, the Supreme Court established a rule which now a is firmly ensconced in the firmament of American Constitutional jurisprudence:

> . . . the Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which *he is* charged.

In re Winship, 397 U.S. at 364. This is at the heart of the difference between civil and criminal jurisprudence in this country and is at the heart of our system. As clearly honed, thus, in deciding Jackson, the court found that the standard is the now long well known standard: whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson at 319, *relying on* Johnson v. Louisiana, 406 U.S. 356 (1972).

In this case, Womble had ample motive and reason to lie. He was wanted by the police on other matters, he wanted to get out of the police station as quickly as possible, and it is quite possible (and even likely) that Womble himself was involved in the shooting death of the victim. It was not reasonable to afford his prior inconsistent statement any quantum of reliability, which would be necessary to convict Newsome of murder.

In this case, the jury was not fully informed of the circumstances surrounding Womble's testimony and was not meaningfully able to assess the credibility of Womble insofar as cross examination of a witness who has made a prior inconsistent statement calls for cross examination of a witness who is not truly available for meaningful cross examination. The right of cross-examination and confrontation of witnesses is an essential element of due process. See Smith v. Illinois, 390 U.S. 129 (1968); In re Oliver, 333 U.S. 257 (1948); Snyder v. Massachusetts, 291 U.S. 97 (1934); Alford v. United States, 282 U.S. 687 (1931); see also Manson v. Brathwaite, 432 U.S. 98, 113-14 n. 14 (1977)(citing Judge Leventhal's concurring opinion in Clemons v. United States, 408 F.2d 1230 (D.C. Cir. 1968), cert. denied, 394 U.S. 969 (1969). Indeed, confrontation has often been referred to as an essential feature of the accusatorial, As opposed to inquisitorial, justice system. See L.LEVY, ORIGINS OF THE FIFTH AMENDMENT 39 (1968).

Prior to Green it was believed that the confrontation clause precluded the substantive admissibility of prior inconsistent statements. After Green the admission of a prior inconsistent statement satisfies the confrontation clause when the declarant is available at trial to be subjected to "full and effective cross-examination." However, cross-examining witnesses about their prior inconsistent statements is of minimal use in detecting the truth. See R. LEMPERT & S. SALTZBURG, A MODERN APPROACH TO EVIDENCE (2nd ed. 1982), at pages 508-511. Cross-examination provides an opportunity to expose effectively only

21

some of the prior statement's reliability problems. Id. For example, it does not effectively prevent the trier of fact's misplaced reliance solely on a hunch to favor a police officer's recitation of a prior inconsistent statement over in-court testimony of the declarant - witness with poor trial demeanor. The out-of-court statement gains increased believability because of its recitation in court by a presumably credible person representing authority. See, e.g. Hass, Effects of Source Characteristics on Cognitive Responses and Persuasion, in COGNITIVE RESPONSES IN PERSUASION 141 (1981). The potential harm to the effective administration of justice inherent in this situation is accentuated when the prior statement constitutes the government's entire case, as in the instant matter. This scenario is rife with the danger of conviction founded not on reason or fact, but rather on mere intuition. It is interesting to observe that juror M "testified that he had overheard some presubmission discussion of witness credibility and some comments about the 'jail clothes' worn by some witnesses.. [r]eferring specifically to Womble, M testified that '[some witnesses] obviously were lying' and '[h]ow do you believe these people?" See State v. Newsome, 238 Conn. 588, 625, 682 A.2d 972 (1996).

The goals of fairness and accuracy inherent in the confrontation and due process clauses mandate that a prior inconsistent statement is sufficient to convict only if the accused has an opportunity to cross-examine the declarant **at the time the prior statement was made or when the declarant was still affirming its truth.** It is interesting to note, that the

22

dissenter in Newsome's direct appeal to the State Supreme Court was the author of the majority opinion in State v. Hopkins, 222 Conn 117, 609 A.2d 236 (1992), where the state Supreme Court upheld the conviction of the defendant based on the prior inconsistent statement of a witness who identified the defendant as the person who shot the victim. In Hopkins, the Court noted the fact that the out of court statement had heightened reliability, because the witness-declarant had also "implicated the defendant at the probable cause hearing while under oath to testify truthfully **and while she was subject to contemporaneous cross-examination by the defendant's counsel…** Accordingly, we conclude that the out-of-court statement Dorothy Hopkins had given to the police had sufficient indicia of reliability and was properly admitted for substantive purposes." Hopkins at page 126 (emphasis added).

So while Green stands for the proposition that prior inconsistent statements can be used as substantive evidence, it does not stand for the proposition that such evidence by itself is enough to satisfy the threshold burden of proof beyond reasonable doubt. *See generally*, Goldman, Stanley, GUILT BY INTUITION: THE INSUFFICIENCY OF PRIOR INCONSISTANT STATEMENTS TO CONVICT, 65 N.C.L. Rev. 1 (1986). In United States v. Orrico, 599 F.2d 113 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit confronted the question of sufficiency of the evidence to convict when the evidence consisted largely of prior inconsistent statements. In Orrico the sole evidence against the defendant was the prior grand jury testimony of one

witness and the prior written statement of another. Id. at 116. At trial neither witness could affirm their prior remarks nor remember much of the events they had previously described. Id. The federal court of appeals interpreted the language in Green as a "strong hint that such statements, though constitutionally admissible, nevertheless may not be sufficient by themselves to sustain a conviction." Id. at 118. The Orrico court found:

> [S]uch evidence might be sufficient…, given strong indicia of reliability and an adequate foundation to establish admissibility. But when such evidence is the only source of support for the central allegations of the charge, especially when the statements barely, if at all, meet the minimal requirements of admissibility, we do not believe that a substantial factual basis as to each element of the crime providing support for a conclusion of guilt beyond a reasonable doubt has been offered by the government.

Id.

Five years later, the Supreme Judicial Court of Massachusetts held that "we will not permit convictions based exclusively on inconsistent extrajudicial testimony to stand," especially in regard to the question of identification. Commonwealth v. Daye, 393 Mass. at 74, 469 N.E.2d 483. Soon thereafter, citing to Orrico, the Supreme Court of Florida, "[held], as a matter of law, that in a criminal prosecution a prior inconsistent statement standing alone is insufficient to prove guilt beyond a reasonable doubt." State v. Moore, 485 So.2d 1279, 1281 (Fla. 1986).

As the dissent in Newsome's direct appeal observed:

> Although I agree that Womble's statement was properly admitted for substantive use, the

24

> evidentiary foundation upon which the defendant's conviction rests is insufficient to sustain the verdict. State v. Cobbs, 203 Conn. 4, 13, 522 A.2d 1229 (1987)(insufficient evidence to prove defendant's guilt beyond reasonable doubt). For the first time, this court today affirms a criminal conviction that rests solely on an uncorroborated inconsistent statement, **which was not subject to contemporaneous cross-examination.** Previously, in both State v. Borelli, 227 Conn. 153, 629 A.2d 1105 (1993), and State v. Hopkins, 22 Conn. 117, 609 A.2d 236 (1992), there was ample independent evidence that corroborated the respective witnesses' extrajudicial statements. Indeed, in State v. Hopkins, supra, at 123-24, 609 A.2d 236, we recognized that "[c]ommentators have pointed out that 'the court should require some corroborative evidence and not permit a conviction to be based solely on an out-of-court inconsistent statement [of a nonparty witness]. See State v. DeFreitas, 179 Conn. 431, 426 A.2d 799(1980) (declaration against penal interest); see also Commonwealth v. Daye, [393 Mass. 55, 469 N.E.2d 483 (1984)].' C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1991 Sup.) § 11.24.1, p. 122.

State v. Newsome at page 634 [emphasis added].

In the present case, a considered review of the evidence, even viewed in the light most favorable to the prosecution, mandates reversal of the district court and the issuance of the writ. In this case, the only evidence of guilt was offered by an interested witness with a motive to lie. In sum, there is reasonable doubt as to Mr. Newsome's guilt. Thus, under the standard enunciated in Winship and further clarified in Jackson, this Court should reverse the district court and issue the writ.

**PRESUBMISSION DISCUSSIONS OF THE JURORS**

Newsome asserts that the state trial court violated Due Process as guaranteed by the Fourteenth Amendment of the U.S. Constitution by denying the petitioner's motion for a new trial

based upon juror misconduct. Subsequent to the return of the jury verdict, the defendant retained the services of a private investigator to interview the discharged jurors with respect to allegations of presubmission misconduct on the part of some jurors.

The trial court held an evidentiary hearing during which the private investigator's written reports were offered into evidence. On the basis of the evidentiary hearing, the trial court determined that it would hear testimony concerning the claims that certain jurors had engaged in presubmission discussions and that one juror had made an unauthorized visit to the crime scene. Ultimately, the trial court, utilizing the investigative report as its basis, personally questioned seven jurors and one alternate over the course of two days. Counsel were permitted to pose questions through the court. The jurors testified as follows (according to the State Supreme Court, see State v. Newsome, pages 624-625.

"T", an alternate juror, testified that she heard remarks made concerning certain witnesses' credibility, including the credibility of Womble. She stated that according to her recollection "[t]hings might have been discussed like this is ridiculous. This is a waste of time. You know, things like that.' She further testified that a "few [jurors]," whom she identified as "B" and "M" had noted that certain witnesses were lying or changing their testimony, which conversation she thought had occurred at a lunch at which she was present.

Juror "N" had no recollection of any presubmission discussion of the evidence. She did however, recall that one fellow juror, whom she identified as "P", had commented that a female witness "looked like the type who do drugs."

Juror "K" testified that she had neither participated in nor overheard any presubmission discussions regarding the credibility of witnesses. "K" confirmed, however, that on two or three occasions, on her normal route to the Trumball Mall, she had passed by the crime scene but did not stop. She indicated that, while driving by, she had tried "to compare the photographs [in evidence] with actually being there, "but said that she had not done so in order to get a "better view of the evidence," but simply to see where the crime had been committed. She testified that her drives past the crime scene had not altered her thinking about the case in any way, and had not altered her verdict. She also stated that she had not communicated anything about her "driving by the scene" to any other juror.

Juror "P" testified that he had overheard "N" and another juror, whom the court later determined to be the jury foreperson, "B", make a few comments regarding one or more witnesses' clothing as well as the credibility of Womble because he had made inconsistent statements about the crime. With respect to the comment concerning the appearance of a female witness attributed to him by "N", "P" denied that he had made that statement to any other juror and claimed that he had only mentioned it to the investigator.

Another juror, "M", testified that he had overheard some presubmission discussion of witness credibility and some comments about the "jail clothes" worn by some witnesses. Referring specifically to Womble, "M" testified that one juror had commented that "[some witnesses] obviously were lying" and "[h]ow do you believe these people?"

Juror "L" stated that he had only overheard presubmission discussion regarding the prison clothing of certain witnesses.

"B", the jury forperson, denied that she had instigated or participated in presubmission discussions regarding the credibility of any witness. She did state, however, that, at one lunch break, she overheard some jurors comment on the credibility of witnesses but that she immediately put a halt to such discussions.

In its memorandum of decision, the trial court reviewed Newsome's claims and concluded that neither comments made by jurors regarding Womble's credibility nor "K's" drives past the crime scene had prejudiced the petitioner.

Newsome asserts that the trial court improperly concluded that statements made by certain jurors regarding Womble's credibility nor the fact that one juror occasionally drove past the crime scene did not warrant a new trial. "The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." United States v. Klee, 494 F.2d 394 (9th Cir.) cert. denied 419 U.S. 835 (1974). Newsome asserts that he was denied a fair criminal trial in that he did not have an impartial jury decide his case solely on the

basis of the evidence and arguments given them in the adversary arena after proper instructions on the law by the court contrary to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Newsome claims his trial counsel was ineffective in her cross-examination, failure to call a witness, failure to have victim's clothing treated, and failed to argue to the jury that Womble had shot Surrency. This are the same claims he raised in his habeas petition which was heard in the Connecticut Superior Court and denied. The denial was upheld on appeal. <u>Newsome v Commissioner of Correction</u>, 64 Conn.App. 904, 777 A.2d 757, cert. denied, 258 Conn. 921, 782 A.2d 1245.

Attorney Carol Goldberg testified she represented petitioner in his criminal trial. Attorney Goldberg began her public defender service in 1983 and came to the Bridgeport Judicial District in 1984. She could not estimate the number of cases she has handled. In her opinion the state did not have a strong case and she shared this view with her client. The only eye witness was Womble and he recanted his statement to the police both at the probable cause hearing and at trial. (TT. 15-16, 42) Petitioner was arrested in July of 1992 and the trial began in March of 1993; she began representing petitioner within weeks of his arrest. (TT. 13, 33) Petitioner testified he asked Attorney Goldberg to talk with a Keith Bland because Bland told petitioner he had spoken to Womble and Womble told Bland that he, Womble,

did not actually see the shooting. He stated he gave this information to Attorney Goldberg prior to trial. (TT. 4, 5, 9) The first time Attorney Goldberg heard the name Keith Bland was when petitioner testified at the hearing . (TT. 36-37) Petitioner further testified that in his opinion Attorney Goldberg did not properly cross-examine Jared Fleming. When Fleming was asked on cross if he actually saw the shooter he said no. Petitioner testified that if Attorney Goldberg 'really pushed' Fleming he would have told her who the shooter was. (TT. 7-8) He based this opinion on the fact that Fleming witnessed the fight and therefore saw the shooter. (TT. 10) Attorney Goldberg testified that Fleming did not add much to the state's case and on cross-examination he admitted he could not identify the shooter; she was satisfied with this answer. (TT. 37)

Attorney Goldberg testified that on cross-examination Womble testified that he told the police petitioner did the shooting because he was forced into saying it and the information contained in his statement was only what he heard. (TT. 17) Womble also testified on cross that when he gave his statement he thought there was an outstanding arrest warrant, that he was taken to a room and surrounded by police officers and felt intimidated. Womble believed he told the police that he only heard petitioner was the shooter but the police testified otherwise at trial. (TT. 21) Attorney Goldberg testified that Womble's testimony changed a number of times at trial. (TT. 23)

Petitioner gave Attorney Goldberg a number of people to interview and from this she subpoenaed ten people to testify at

trial. Attorney Goldberg was at the scene between July of 1992 and May of 1993, and during petitioner's trial, talking to various possible witnesses. None of these people gave petitioner an alibi but rather put petitioner at the scene. None of these people stated Womble did the shooting nor was there any witnesses who said Fleming was the shooter.[5] (TT. 33-35, 38) This information was given to petitioner. Attorney Goldberg testified that from this group she had a number of witnesses she could have called but after many, many discussions with petitioner it was determined, by both petitioner and her, not to have the witnesses testify. The reason being that this was a one witness case, the witness had recanted and it was questionable whether the jury would believe Womble. Attorney Goldberg further testified that their testimony was inconsistent and would place petitioner at the scene. (TT. 27, 36)

Attorney Goldberg also considered third party culpability in that either Womble or Jared Fleming had committed the crime. She requested, in a charging conference, that the trial court instruct on third party culpability but the trial court refused. (TT. 27) The only evidence of Womble being the shooter was the fact he was at the scene. (TT. 31) Attorney Goldberg testified she did not test the victim's clothing for the presence of beer nor did the state put on any such evidence. (TT. 26) She filed a motion to preserve evidence but she never received the clothing.

---

[5] Attorney Goldberg interviewed Fleming. (TT. 35)
Attorney Goldberg interviewed Fleming. (TT. 35)

Attorney Goldberg testified that she did not consider the victim's clothing an important aspect of the case. The state's case rested entirely pon Womble's written statement which Attorney Goldberg tried unsuccessfully to exclude at trial.(TT. 40-41)

The appeal of the denial of a writ of habeas corpus is governed by the certification requirement of 52-470(b) which provides that no appeal may be taken from the habeas court unless that court first certifies "that a question is involved in the decision which ought to be reviewed . . ." In order to have an appellate court consider the merits of a habeas appeal the petitioner must establish "a clear abuse of discretion in the habeas court's denial of his request for certification". Simms v Warden, 230 Conn. 608, 616, 646 A.2d 126 (1994) . The appellate court must find that the issues, as presented by petitioner, "were debatable among jurists of reason, that they could reasonably have been resolved differently, or that they raised questions deserving further appellate scrutiny" . Id, 618. "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done.,, (Citations omitted; internal quotation marks omitted.) State v Reddick, 224 Conn. 445, 467, 619 A.2d 453 (1993) . If petitioner succeeds in surmounting this hurdle he 11 must also then demonstrate that the judgment of the habeas court should be reversed on its merits." Simms v Warden,

supra, 230 Conn. 612. As will be argued below the habeas court abused its discretion in finding that the writ did not meet the requirements of the statute.

It is clear under both the federal and state constitutions that petitioner is entitled to the effective assistance of counsel at trial and on appeal. Gideon v Wainwright, 372 U.S. 335 (1963); Levin v Manson, 195 Conn. 636,639, 490 A.2d 82 (1985). In order for a convicted defendant to prevail on his claim that his counsels performance was so defective as to require reversal, he must prove not only that his attorney made errors so serious that he ceased to function as counsel, but also that there is a reasonable probability that, but for these unprofessional errors, the results of the proceedings would have been different. Hill v Lockhart, 474 U.S. 52, 57 (1985); Blakeney v Commissioner of Correction, 47 Conn.App. 568,582, 706 A.2d 989, cert. denied. 244 Conn. 913, 713 A.2d 830 (1998). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed., Strickland v. Washington, 466 U.S. 668, 697, reh. denied, 467 U.S. 1267 (1984) as quoted in Allion v. Meachum, 211 Conn. at 362. With respect to the prejudice competent, petitioner must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v Washington, 466 U.S. at 687. Basic to habeas corpus law is that error which might justify reversal on appeal will not necessarily support a collateral attack following a final judgment. United States v Addonizio, 442 U.S. 178, 184 (1979).

The United States Supreme Court of recently stated that in an appeal form a state habeas it is not whether it would have reached the same conclusion as the state court, but that it must find the state court decision is unreasonable. Wiggins v. Smith, U.S. No. 02-311, 73 CrL 365.

Throughout petitioner's argument at the state court level he maintained that the four claims considered by the habeas court all amount to instances of ineffective assistance of counsel. These alleged errors prejudiced his trial. Rodney Womble was an unsavory witness who himself was just as likely to be the person who shot the victim. The transcript of the criminal trial demonstrates an anemic attempt to make a blanket "reasonable doubt" argument without raising the question of Womble's actual role in the incident. Had counsel made the effort to implicate Womble, there exists a reasonable probability that the result of the trial would have been different. See Levine v Manson, 195 Conn. at 640. "A reasonable probability is a probability sufficient to undermine confidence in the verdict." Dontigney v Commissioner of Correction, 42 Conn.App. 304, 305, 679 A.2d 55, cert. denied 239 Conn. 918, 682 A.2d 999 (1996).

Examining Newsome's claims under the first prong of Strickland there is ample evidence that Attorney Goldberg's representation fell below an objective standard of reasonableness. Attorney Goldberg' s decision regarding the cross-examination of Womble and Fleming was not a carefully thought out, tactical one based on sound strategy. Attorney Goldberg erroneously felt that Fleming's testimony did not harm

petitioner and she had to treat Womble carefully as she wanted the jury to believe Womble's in court testimony and not his statement. This was not sound trial strategy given the dangers of Womble's statement to the police, and the decision not to have Newsome testify on his own behalf.

While Attorney Goldberg testified she did not know of Bland until the habeas hearing, a careful and proper investigation would have revealed him to her. She could have impeached impeached Womble with his testimony. Attorney Goldberg's decision not to put cumulative impeachment evidence of Womble before the jury was not sound trial strategy. The same can be said of the testing of the clothes. If the test came back positive showing that beer was not poured on the victim her strategy in discrediting Womble's statement would have been greatly improved.

The last claim concerns Attorney Goldberg's failure to Argue to the jury that Womble was the actual shooter. The evidence presented at trial demonstrated that Womble was as likely the shooter as Newsome, and the fact that Womble was even present with the victim at the time of the shooting under the circumstances of the engagement is demonstrative that he had something to do with the events in question. Both Womble, a convicted felon, and Surrency, high on cocaine at the time of the incident (see the trial evidence of his autopsy report) are shady characters. This alone was enough evidence to connect Womble to the shooting.

While it has long been held that it is not enough to raise a bare suspicion that some other person may have committed the crime, there is significant evidence which directly connects a third party, Womble, to the murder. <u>State v Ortiz</u>, 252 Conn. 533, 564, 747 A.2d 487 (2000); <u>State v Hernandez</u>, 224 Conn. 196, 202, 618 A.2d 494 (1992). It is clear that petitioner **was** entitled to a jury charge on third party culpability. Attorney Goldberg could have, and should have, argued third party culpability to the jury.

## CONCLUSION

For all the above stated reasons, the petitioner, Shawn Newsome, respectfully requests this Court to set aside his conviction.

> RESPECTFULLY SUBMITTED
> SHAWN NEWSOME
>
> By: _____
> Raymond J. Rigat, Esq.
> His Attorney
> Gilbride & Rigat
> 23 east Main Street
> Clinton, Connecticut  06413
> Tel.: (860) 669-3273
> Fax: (860) 669-3495
> Federal Bar No.: ct13320

## C E R T I F I C A T I O N

I hereby certify that a copy of the foregoing Memorandum of Law in Support of Pettition for Writ of Habeas Corpus, has been sent, postage pre-paid, Regular U.S. Mail, this 8th Day of December, 2003, to the following:

Frederick W. Fawcett, Esq.
Supervisory Assistant State's Attorney
Fairfield Post Conviction Remedy Unit
1061 Main Street
Bridgeport, Connecticut  06604

_____
Raymond J. Rigat, Esq.