# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHAWN NEWSOME,               :
         Petitioner,      :
                      :
v.                     :       **Case No. 3:01CV1968 (DJS)**
                      :
COMMISSIONER OF CORRECTION, :
        Respondent.    :

## RULING ON AMENDED PETITION
## FOR WRIT OF HABEAS CORPUS

The petitioner, Shawn Newsome, currently confined at the Cheshire Correctional

Institution in Cheshire, Connecticut, brings this action for a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  He challenges his conviction for murder in violation of Connecticut General

Statutes § 53a-54a.  For the reasons set forth below, the amended petition (doc. # 24) is

DENIED.

## I.  Procedural Background

Shawn Newsome was convicted on May 26, 1993, after a jury trial, of murder in

violation of Connecticut General Statutes § 53a-54a(a).  On April 15, 1994, Newsome was

sentenced to forty-five years imprisonment.  Newsome filed a direct appeal with the Connecticut

Supreme Court on June 6, 1994, alleging that (1) the evidence was insufficient to sustain his

conviction; (2) the finding of probable cause was invalid and therefore the trial court lacked

jurisdiction over his case; (3) the state trial court misapplied the doctrine of *State v. Whelan*, 200

Conn. 743 (1986) that permits the introduction of a prior inconsistent statement of a witness as

substantive evidence when the declarant is available for cross-examination at trial; and (4) the

trial was tainted by jury misconduct.  The Connecticut Supreme Court affirmed the conviction

and rejected each of Newsome's claims on August 6, 1996.  *State v. Newsome*, 238 Conn. 588 (1996).

Petitioner filed a pro se petition for a writ of habeas corpus in state court on April 30, 1997, claiming ineffective assistance of counsel.  The petition was amended on December 29, 1998, again alleging ineffective assistance of counsel at his criminal trial.  A hearing on the petition was held on February 23, 2000.  Newsome alleged that his counsel, Attorney Carol Goldberg, failed, among other charges, to:  properly cross-examine state's witnesses; present witnesses on Newsome's behalf; investigate physical evidence; put forward an alternate theory of the case; litigate the issue of juror misconduct; and challenge the sufficiency of the evidence. The habeas court found the petition to be without merit and dismissed the claim on May 16, 2000.  Newsome motioned for a certification to appeal the ruling and this was denied on May 24, 2000.  Petitioner appealed the denial of certification as an abuse of discretion, and the Connecticut Appellate Court dismissed this appeal.  *Newsome v. Commissioner of Correction*, 64 Conn. App. 904 (2001).  Newsome then filed a petition for certification to appeal with the Connecticut Supreme Court, which was denied on September 20, 2001.  *Newsome v. Commissioner of Correction*, 258 Conn. 921 (2001).

The present petition was initially filed in federal court on October 18, 2001. Petitioner brought five claims in support of his petition.  First, he claimed that evidence to support his criminal conviction was insufficient, so that no rational trier of fact could have found him guilty beyond a reasonable doubt.  Second, he claimed that the admission of prior inconsistent statements as substantive evidence, even under *Whelan*, constitutes a violation of  due process of law as guaranteed under the Fourteenth Amendment to the United States Constitution.  Third, Newsome alleged that the state trial court's admission of a prior inconsistent statement as

substantive evidence, where that evidence was the sole evidence of guilt, is a violation of due process pursuant to the United States Supreme Court's ruling in *California v. Green*, 399 U.S. 149, 164 n.15 (1970).  Fourth, petitioner claimed that the trial court erred in denying his motion for a new trial based on juror misconduct.  Fifth, Newsome argued that he suffered from ineffective assistance of counsel during his criminal trial.  Because petitioner had not exhausted all of his available state remedies as to the Second and Third Claims, the court dismissed those claims without prejudice and stayed the remaining claims pending resolution of petitioner's efforts to exhaust the dismissed claims in state court proceedings.

On December 7, 2004, Newsome filed a second habeas petition in the Connecticut Superior Court to present his two unexhausted claims, which petition was denied on June 4, 2007.  Newsome filed a petition for certification to appeal on June 8, 2007, which was denied the same day.  Petitioner then filed an appeal with the Connecticut Appellate Court on June 22, 2007, which was dismissed on July 15, 2008. *Newsome v. Commissioner of Correction*, 109 Conn. App. 159 (2008).  Petitioner then filed a petition for certification with the Connecticut Supreme Court on July 16, 2008, which was denied on September 10, 2008. *Newsome v. Commissioner of Correction*, 289 Conn. 918 (2008).  Petitioner filed his amended petition for writ of habeas corpus with this Court on September 16, 2008.

## II. Factual Background

The Connecticut Supreme Court determined that the jury reasonably could have found the following facts:

> At approximately 10:30 p.m. on March 4, 1992, Bridgeport police officer David Daniels heard two gunshots fired in the area of 455 Trumbull Avenue in Bridgeport.  When Daniels responded to the location where he believed the shots had been fired, he saw a car leave the area and discovered the victim, Lance Surrency, lying in the grass in front of 385 Trumbull Avenue.  The victim had been shot in the face and was unresponsive.  He died shortly thereafter.

The following day, the police questioned Rodney Womble about the shooting.  In a signed, sworn statement, Womble identified the defendant as the person who had shot the victim.  Womble told the police that on the previous evening he had observed a fight between the victim and several other men, including the defendant, while they were standing near a "food bus" in a parking lot of the Trumbull Gardens Housing Complex.  Womble stated that the defendant had poured beer on the victim to provoke him to fight and had then taken out a gun and shot the victim.  He further stated that immediately after the shooting, the defendant had entered a car parked nearby and had driven away.

The defendant was subsequently arrested and charged with the victim's murder.  At both the probable cause hearing and at the trial, Womble testified that although he had witnessed the shooting, he had not been able to identify the person who had shot the victim. Womble admitted that he had told the police that the defendant was the shooter, but claimed that he had only heard rumors that the defendant had shot the victim and had given the defendant's name to the police in order to leave the police station as quickly as possible. At the probable cause hearing, the state introduced the portion of Womble's prior statement to the police in which he described the shooting. The segment of the statement was offered for substantive purposes pursuant to *State v. Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The trial court found probable cause to believe that the defendant had murdered the victim. At trial, the state introduced Womble's entire statement, with some redactions, for substantive purposes pursuant to *Whelan*. Womble's statement provided the only identification evidence against the defendant.

*State v. Newsome*, 238 Conn. at 590-91.

### III. Standard of Review

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), significantly amended 28 U.S.C. § 2254.  A federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any

claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The federal law defined by the Supreme Court "may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context."  *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002).

A decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court] ha[s] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A state court decision is an "unreasonable application" of clearly established federal law "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case."  *Id.*  When considering the unreasonable application clause, the focus of the inquiry "is on whether the state court's application of clearly established federal law is objectively unreasonable . . . ."  *Id.*  The Court has emphasized that "an unreasonable application is different from an incorrect one."  *Id.*  In both scenarios, federal law is "clearly established" if it may be found in holdings, not dicta, of the Supreme Court as of the date of the relevant state court decision.  *See Lurie v. Wittner*, 228 F.3d 113, 125 (2d Cir. 2000).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct.  The petitioner has "the burden of rebutting the

presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Collateral review of a conviction "is not just a rerun of the direct appeal."  *Lee v. McCaughtry*,

933 F.2d 536, 538 (7th Cir. 1991).  Thus, "an error that may justify reversal on direct appeal will

not necessarily support a collateral attack on a final judgment."  *Brecht v. Abrahamson*, 507 U.S.

619, 634 (1993) (internal quotation marks omitted).

## IV. Discussion

The respondent argues that the Court should deny the petition as to all five of petitioner's

grounds because the petitioner has not demonstrated that any of the state court decisions were

contrary to, or an unreasonable application of, clearly established federal law.

## A.  Insufficiency of the evidence

The petitioner contends that there was insufficient evidence adduced at trial to sustain his

conviction, and that no rational trier of fact could have found him guilty beyond a reasonable

doubt.  Specifically, the petitioner claims that his conviction, based solely upon a prior

inconsistent statement, is not properly based upon proof beyond a reasonable doubt, and thus is

in violation of clearly established federal law as determined by the Supreme Court of the United

States.

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a

criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged.'"  *Jackson v. Virginia*, 443 U.S. 307,

315 (1979) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).  The Due Process Clause

"guarantee[s] . . . that no person shall be made to suffer the onus of a criminal conviction except

upon sufficient proof - - defined as evidence necessary to convince a trier of fact beyond a

reasonable doubt of the existence of every element of the offense."  *Id.* at 316.  "Yet a properly

instructed jury may occasionally convict even when it can be said that no rational trier of fact

could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury." *Id.* at 317.  "[W]hen such a conviction occurs in a state trial, it cannot constitutionally stand." *Id.* at 318.  Therefore, "[a] federal court has a duty to assess the historic facts when it is called upon to apply a constitutional standard to a conviction obtained in a state court." *Id.* Accordingly, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 - - if the settled procedural prerequisites for such a claim have otherwise been satisfied - - the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Id.* at 324.

The relevant inquiry on review of the sufficiency of the evidence is not "whether [the court] believes that the evidence at the trial established guilt beyond a reasonable doubt."  *Id.* at 319 (internal quotation marks omitted).  Rather, it is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.*

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

*Id.*

The Supreme Court, in *Yarborough v. Alvarado*, 541 U.S. 652 (2004), shed further light on the issue of whether a state court decision "involved an unreasonable application" of clearly established law. When a state court is applying clearly established federal law, "the range of reasonable judgment can depend in part on the nature of the relevant rule.  If a legal rule is specific, the range may be narrow."  *Id.* at 664.  However, "[o]ther rules are more general, and

their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment." *Id.* Therefore, "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.*

Proof of guilt beyond a reasonable doubt, as required by the Due Process Clause of the Fourteenth Amendment, seems the quintessential "general rule." Reasonable doubt "is not a mathematically precise concept." *Policano v. Herbert*, 453 F.3d 79, 92 (2d Cir. 2006). Therefore, "sufficiency review of a jury verdict is both general and deferential." *Id.* Furthermore, "when a federal habeas court conducts AEDPA review of a state court's sufficiency ruling, it . . . must first look to state law to determine the facts necessary to constitute the charged crime . . . [and] may not second-guess a state court's construction of its own law." *Id.* (citation omitted). Considered together, "these factors . . . suggest AEDPA deference may well be at its highest when a habeas petition challenges a state court's determination that the record evidence was sufficient to satisfy the state's own definition of a state law crime." *Id.*

In the present case, the Connecticut Supreme Court applied the applicable rule of finding guilt beyond a reasonable doubt. *State v. Newsome*, 238 Conn. at 617. While the court did not expressly state it was considering the petitioner's argument to be that it was a violation of the Due Process Clause of the Fourteenth Amendment to find him guilty based solely on the prior inconsistent statement, it did state "the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense . . . ." *Id.* Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of § 2254(d)(1). Thus, the petitioner may obtain federal habeas relief only if the state court decision was an unreasonable application of that standard to the facts of this case.

Viewing the evidence adduced at Newsome's trial in the light most favorable to the prosecution, as is required by *Jackson*, 443 U.S. at 319, a reasonable jury could have found either of two possible scenarios with regard to Surrency's death. First, a reasonable jury could have found, as the State argued at trial, that Womble had been telling the truth in his prior written statement to the police when he stated he saw Newsome shoot Surrency and was, therefore, lying on the witness stand during the trial.  Second, a reasonable jury could have found, as the petitioner argued at trial, that Womble was telling the truth in court and had been lying to the police in his prior written statement. Therefore, Newsome's claim goes to the credibility of Womble.  "[Q]uestions of witness credibility are jury questions and a federal habeas court may not reassess the jury's finding of credibility. . . ." *Rosario v. Walsh*, No. 05 Civ. 2684 (PKC) (AJP), 2006 U.S. Dist. LEXIS 33385, at *77 (S.D.N.Y. May 25, 2006).

The Second Circuit "ha[s] held that the testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction." *Edwards v. Jones*, 720 F.2d 751, 755 (2d Cir. 1983) (internal quotation marks omitted).  In *Edwards*, the defendant Edwards was found guilty of the offense of manslaughter in connection with the stabbing death of Jorge Ferriera. "[T]he prosecution's case rested in large part on the testimony of George Robinson, who was the only witness to implicate Edwards directly." *Id.* at 752.   Robinson testified that "he, Ferriera and two other individuals . . . were selling marijuana . . . [when] [a] car with three people in it drove up . . . . [T]he three people left the car and approached Robinson's group." *Id.*  Robinson testified that one of the individuals was Edwards, who asked Robinson's group if "they had broken into a 'reefer house,' a place where marijuana was sold." *Id.*  Robinson further testified that when the group denied the accusation, Edwards "pulled out a kitchen knife and stabbed Ferriera." *Id.* Finally, Robinson testified that as he was running away, he looked back and saw Edwards

"throw his knife toward a fence in the park." *Id.*  At the time of trial, Robinson's criminal history was entered into evidence.  He "was on probation for assault at the time of the killing," had only reported the incident involving Edwards after "he was arrested . . .  in connection with a burglary," and "was serving a four-year sentence for possession of stolen property at the time of his testimony." *Id.*

Robert Kelly, Jr., a New York City corrections officer, was also an eyewitness.  He testified that "five young people left a pre-1970 model car and approached 'a couple' of individuals.  One of the latter group ran away as his companion was punched and beaten up. . . . Kelly saw something thrown toward a park fence and heard the sound of 'metal hitting metal.'" *Id.*  Kelly could not identify any of the assailants.  Thus, Kelly's testimony corroborated certain aspects of Robinson's testimony while also contradicting other aspects of Robinson's testimony.

On appeal, the Second Circuit found that while Robinson's "testimony and character were less than inspiring, his testimony was, in fact, corroborated in such important respects as that a knife was thrown to the ground by one of the assailants." *Id.* at 755.  Furthermore, the court emphasized that defense counsel had an opportunity through cross-examination to "explore Robinson's credibility . . . and argue its weakness in summation." *Id.*  "On this record, [the court] cannot say that the jury . . . reached an irrational verdict." *Id.*

The present case is analogous to *Edwards* in that Womble's statement to the police included certain facts that were corroborated by an independent witness.  Officer Daniels was in the vicinity at the time the gun was fired.  He heard the gunshots and responded to the scene. Upon his arrival, he saw a car leaving the scene.  Therefore, Officer Daniels' testimony corroborated Womble's statement to police regarding the time of the shooting, the place of the shooting, and the car leaving the scene immediately following the shooting.  Furthermore,

petitioner's counsel was able to conduct a thorough cross-examination of Womble to draw out the reasons why Womble now claimed his prior statement to the police was false. These facts are similar to the witness in *Edwards* who saw the altercation and the assailant throwing the knife near the fence, thereby corroborating in part the statement of Robinson.

The present case is also distinguishable from *Edwards* in that Womble later recanted his statement to the police - - both at the probable cause hearing and at trial - - while Robinson never recanted his identification of Edwards. However, this distinction does not alter the result. As the Second Circuit has stated, the resolution of conflicting testimony is a matter for the jury to resolve. *See United States v. Vasquez*, 267 F.3d 79, 91 (2d Cir. 2001) ("The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility."); *see also Rosario v. Walsh*, 2006 U.S. Dist. LEXIS 33385, at *78 ("The fact that Reyes was the only eyewitness and his testimony was the only evidence against Rosario and Padilla, and/or that there may have been some inconsistencies between Reyes' testimony and her [sic] prior statements, does not change the result.").

The United States Supreme Court again dealt with the issue of habeas review of a state court conviction in *Cavazos v. Smith*, 132 S.Ct. 2 (2011). The Court reaffirmed that "it is the responsibility of the jury - - not the court - - to decide what conclusions should be drawn from evidence admitted at trial." *Id.* at 4. Furthermore, "[a] reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court." *Id.*

11

In *Cavazos v. Smith*, a jury convicted Smith of assault on a child resulting in death. *Id.* at 4-5. At trial, the prosecution called three expert witnesses to testify to the cause of death of the child. Each expert witness for the prosecution testified that the cause of death was Shaken Baby Syndrome. *Id.* The defendant called two expert witnesses to testify to the cause of death. One expert testified that the infant died from a prior trauma, and the other expert testified that the infant died of Sudden Infant Death Syndrome. *Id.* at 5. Since the expert testimony was conflicting, "[i]t was for the jury to resolve the conflicts." *Id.* (internal quotation marks omitted). The Supreme Court stated that *Jackson* "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume - - even if it does not affirmatively appear in the record - - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 6 (quoting *Jackson*, 443 U.S. at 326).

In the present case, the conflicting testimony was the in-court testimony of Womble and the prior inconsistent statement of Womble. This Court must presume that the jury resolved the conflict in favor of the prosecution and must defer to that resolution. *See Vasquez*, 267 F.3d at 91 (finding that defendant had an opportunity to highlight the witnesses' inconsistencies, that "[t]he jury chose to believe the witnesses' testimony despite any inconsistencies," and that the court "will defer to the jury's assessment of credibility").

As the Supreme Court recently stated in *Coleman v. Johnson*, 132 S.Ct. 2060 (2012),

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, "it is the responsibility of the jury - - not the court - - to decide what conclusions should be drawn from evidence admitted at trial. . . ." And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court."

*Id.* at 2062 (quoting *Cavazos*, 132 S.Ct. at 2).  "Because the Court of Appeals failed to afford due respect to the role of the jury and the state courts," the Supreme Court reversed the granting of the habeas petition.  *Id.*

Since the Connecticut Supreme Court applied the applicable rule of finding guilt beyond a reasonable doubt and because the jury resolved the conflicts in the testimony at trial in favor of the prosecution, this Court concludes that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Therefore, the Court denies the petition for habeas corpus as to the claim of insufficiency of the evidence.

## B.  Prior inconsistent statement and Due Process

The petitioner next contends that admission for substantive purposes of a witness's prior out-of-court statement that is inconsistent with his trial testimony violates the Due Process Clause of the Fourteenth Amendment.  The Supreme Court has addressed the issue of the admission of out-of-court testimonial statements for substantive purposes on several occasions. The Court has consistently held that admission at trial of such out-of-court statements does not violate a criminal defendant's constitutional rights so long as the defendant has been able to confront the witnesses against him. *See, e.g.*, *Michigan v. Bryant*, 131 S. Ct. 1143, 1155 (2011) (introducing statements of a witness made during an out-of-court interrogation to obtain evidence for trial "can be unfair to the accused if they are untested by cross-examination"); *Crawford v. Washington*, 541 U.S. 36, 59 (2004) ("[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.").  Thus, so long as the defendant's Sixth

13

Amendment Confrontation Clause rights have been satisfied, there is no constitutional violation relating to the cross-examination and confrontation of witnesses[1]. Since Womble appeared at the trial and was subject to full cross-examination by counsel for the petitioner, the Confrontation Clause places no constraints on the use of the statements contained in the signed, sworn statement he made to police the day after the shooting. *See California v. Green*, 399 U.S. 149, 158 (1970) ("[T]here is good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination.") Therefore, in this case, the Confrontation Clause of the Sixth Amendment was satisfied, and thus the Court denies the petition for habeas corpus as to the claim of a violation of due process based on the admission of Womble's out-of-court statement to the police.

## C.  Prior inconsistent statement as sole evidence and Due Process

The petitioner next contends that the admission at trial of Womble's prior inconsistent statement, where that statement constituted the sole evidence of the petitioner's guilt, violated the Due Process Clause of the Fourteenth Amendment.  According to the petitioner, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt" solely upon the basis of Womble's prior inconsistent statement. (Doc. # 40, at 4.)

A petition for a writ of habeas corpus by a state prisoner must be "based on a principle of Supreme Court caselaw that was clearly established when the state court ruled." *Lurie v. Wittner*,

---

[1] Although the petitioner raised his claim in terms of the Due Process Clause of the Fourteenth Amendment, his memorandum argues in terms of "[t]he right of meaningful cross-examination and confrontation of witnesses" as an "essential element of Due Process." (Doc. # 40, at 3.) The Sixth Amendment's Confrontation Clause is the "bedrock procedural guarantee [that] applies to both federal and state prosecutions." *Crawford*, 541 U.S. at 42; *see also Strickland v. Washington*, 466 U.S. 668, 684-85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clause, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment. . . ."). Thus, if the requirements of the Confrontation Clause are satisfied, the defendant has received the process guaranteed by the United States Constitution with regard to "the right of meaningful cross-examination and confrontation of witnesses."

14

228 F.3d 113, 125 (2d Cir. 2000) (internal quotation marks omitted). "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court' refers only 'to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  In arguing that the admission of Womble's prior inconsistent statement violated the Due Process Clause because that statement constituted the sole evidence of his guilt, the petitioner relies on a footnote in *California v. Green*, which states, in pertinent part, "While we may agree that considerations of due process, wholly apart from the Confrontation Clause, might prevent convictions where a reliable evidentiary basis is totally lacking, *see Thompson v. Louisville*, 362 U.S. 199 (1960), we do not read *Bridges* [*v. Wixon*, 326 U.S. 135 (1945)] as declaring that the Constitution is necessarily violated by the admission of a witness' prior inconsistent statement for the truth of the matter asserted. The Court's opinion in *Bridges* does not discuss the Confrontation Clause." *Green*, 399 U.S. at 164 n. 15. As noted by the Connecticut Appellate Court in its opinion affirming the decision of the state habeas trial court, "Because the footnote [in *California v. Green*] was not the court's holding, it is purely dictum and not binding on any lower court, and the [trial] court properly refused to entertain the petitioner's [Due Process Clause] claim that was premised on the footnote."  *Newsome v. Commissioner of Correction*, 109 Conn. App. 159, 167 (2008). Since the petitioner's due process claim is not "based on a principle of Supreme Court caselaw that was 'clearly established' when the state court ruled," *Lurie*, 228 F.3d at 125, his petition cannot be granted as to that claim.

The Court further notes that in mentioning "considerations of due process" in footnote 15 of *California v. Green*, the Supreme Court referred to *Thompson v. Louisville*, 362 U.S. 199 (1960). *Green*, 399 U.S. at 164 n. 15. In *Thompson*, the petitioner had been found guilty of

loitering and disorderly conduct after having been arrested in a café by Louisville police officers. The record evidence relating to the loitering charge was as follows: two Louisville police officers came into the café on a "routine check"; the police officers saw the petitioner "out there on the floor dancing by himself"; one of the police officers questioned the café manager and was told that the petitioner had been there "a little over a half-hour and that he had not bought anything"; that same police officer approached the petitioner and "asked him what was his reason for being there and he said he was waiting for a bus"; the officer then advised the petitioner he was under arrest and took him outside. *Thompson*, 362 U.S. at 200. The manager of the café testified that the "petitioner was welcome there." *Id.* at 205. The entirety of the record evidence relating to the disorderly conduct charge was the testimony of one of the police officers that "[a]fter going outside, . . . [the petitioner] argued with [the police officers] back and forth and so then we placed a disorderly conduct charge on him." *Id.* at 200.

The Supreme Court determined that the petitioner in Thompson could only have been convicted of loitering if the evidence proved all three elements required under the relevant city ordinance, i.e., the petitioner was "unable to give a satisfactory account of himself while loitering in the café, without the consent of the manager." *Id*. at 204.  The Court had no difficulty reaching the conclusion that there was "no evidence whatever in the record to support these convictions," and that it was "a violation of due process to convict and punish a man without evidence of his guilt." *Id.* at 206.  Although the petitioner in this case contends that the prior inconsistent statement of Womble should not have been admitted into evidence, there is no question that Womble's statement was evidence that supported the petitioner's conviction. The record that was before the state court in *Thompson* bears no resemblance to the record that was before the state court in the instant case.

**D. Juror Misconduct**

The petitioner next contends that the trial court violated his Due Process rights under the Fourteenth Amendment to the United States Constitution by denying his motion for a new trial based upon juror misconduct. "Specifically, he claims that the trial court improperly concluded that neither statements made by certain jurors regarding Womble's credibility nor the fact that one juror occasionally drove past the crime scene warranted a new trial." *Newsome*, 238 Conn. at 623. On direct appeal, the Connecticut Supreme Court found this claim to be without merit. As to presubmission discussions, the court concluded that the trial court, which had held an evidentiary hearing on the petitioner's claims of juror misconduct, "properly found that the challenged presubmission discussions were harmless beyond a reasonable doubt." *Id.* at 630. The court further concluded that the actions of a single juror driving past the murder scene, where "there is no proof that the juror did so for the purpose of evaluating the evidence, conversed with other jurors about the case or was influenced by the incidents . . . did not prejudice the defendant's right to a fair trial." *Id*. at 632-33.

"Because [the courts] accord a presumption of validity to a judgment on collateral review, it is the petitioner who bears the burden of proving that he is being held contrary to law. . . ." *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011). As noted by the respondent, the petitioner failed "to provide a single United States Supreme Court decision that supports his claim." (Doc. # 38, at 26.) He relies instead on a decision issued by the Court of Appeals for the Ninth Circuit, *United States v. Klee*, 494 F.2d 394 (9th Cir. 1974) (Doc. # 17-2, at 9.)This Court cannot grant a writ of habeas corpus with respect to this claim unless the state court decision was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d). Since the

petitioner's claim concerning juror misconduct is not based on "clearly established Federal law, as determined by the Supreme Court of the United States," *id.*, he has failed to meet his burden of proving that he is being held contrary to law, and this Court is prohibited from granting a writ of habeas corpus with respect to that claim.

The Court also notes that the Connecticut Supreme Court, after summarizing the testimony of jurors who were questioned at the evidentiary hearing on the petitioner's motion for a new trial, concluded that the petitioner had failed to establish prejudice resulting from presubmission discussions concerning Womble or one juror's drives past the crime scene. The United States Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Smith v. Phillips*, 455 U.S. 209, 215 (1982). It is readily apparent that the decision of the Connecticut Supreme Court was neither "contrary to, [n]or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . ." 28 U.S.C. § 2254 (d). For this additional reason, the Court denies the petition for habeas corpus as to the claim of juror misconduct.

**E.  Ineffective Assistance of Counsel**

The petitioner finally contends that trial counsel was ineffective in her cross-examination, failure to call a witness, failure to have the victim's clothing tested, and failure to argue to the jury that Womble had shot the victim.  This is the same claim the petitioner raised in his habeas petition heard in the Connecticut Superior Court, which was denied.  The denial was upheld on appeal.  *Newsome v. Commissioner of Correction*, 64 Conn. App. 904, *cert. denied*, 258 Conn. 921 (2001).

An ineffective assistance of counsel claim is reviewed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  According to the two-part test established in

*Strickland*, the petitioner must demonstrate, first, that counsel's performance "fell below an objective standard of reasonableness" established by prevailing professional norms, and, second, that this deficient performance prejudiced his defense, i.e., "counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." *Id.* at 687-88. Counsel is presumed to be competent. *See id.* at 689.  Thus, "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984).

To satisfy the objective standard of reasonableness prong, the petitioner must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. However, "[j]udicial scrutiny of counsel's performance must be highly deferential . . . [and] every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id.* at 689.

To satisfy the prejudice prong of the *Strickland* test, the petitioner must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "Reasonable probability" is defined as "a probability sufficient to undermine confidence in the outcome" of a trial. *Id.* "[T]h e phrase 'reasonable probability' . . . describe[s] a fairly low standard of probability, albeit somewhat more likely than a 'reasonable possibility.'" *Simms v. Moscicki*, No. 06 Civ. 2056(DLC)(AJP), 2006 U.S. Dist. LEXIS 59932, at *46 n. 31 (S.D.N.Y. Aug. 25, 2006) (citing *Strickler v. Greene*, 527 U.S. 263, 291 (1999)).

According to the Supreme Court, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Furthermore, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691.

To prevail, the petitioner must demonstrate both deficient performance and sufficient prejudice. *See id.* at 700. Thus, if the court finds one prong of the standard lacking it need not consider the remaining prong. "'The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard.'" *Simms*, 2006 U.S. Dist. LEXIS 59932, at *49 (quoting *Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001)).

In its analysis in the state habeas matter, the Connecticut Superior Court applied the standard established in *Strickland*. Because the state court applied the correct legal standard, the state court decision cannot meet the "contrary to" prong of § 2254(d)(1). Thus, the petitioner may obtain federal habeas relief only if the state court decision involved an unreasonable application of that standard to the facts of this case.

### 1. Ineffective Cross-Examination

The petitioner claimed in his state habeas petition that trial counsel, Attorney Carol Goldberg, unreasonably failed to cross-examine the state's witnesses. After petitioner's hearing on his habeas petition, the Connecticut Superior Court found the petitioner's claim to be without merit. The petitioner claimed that trial counsel failed to properly cross-examine the witness

Jared Fleming as to his knowledge of who shot the victim.  Fleming testified at trial "that he was in his house at the time of the shooting and did not see who shot the victim. Attorney Goldberg briefly cross-examined Fleming to reaffirm that he did not know who shot the victim." *Newsome v. Tarascio*, No. CV 970400668, 2000 Conn. Super. LEXIS 1222, at *7 (Conn. Super. Ct. May 16, 2000). The habeas trial court concluded that "Attorney Goldberg's cross-examination of Fleming was reasonable in light of the circumstances," thus satisfying the first prong of the *Strickland* standard. *Id.*  The second prong of the *Strickland* standard was satisfied when the state court credited Attorney Goldberg's testimony "that her cross-examination of Fleming was brief because his testimony did not harm the petitioner's case.  Fleming could not identify the petitioner or anyone else as the shooter."  *Id.*

   The petitioner further claimed that trial counsel "failed to properly cross-examine Womble with respect to the assertion in his written statement that the gunshot 'sounded like a .38'" *Id.* at *7-8. According to the petitioner, Womble could not have determined the caliber of the weapon from its sound. Womble testified at trial that the weapon "'sounded like a thirty-eight, I don't know for sure what kind it was.'" *Id.* at *8. The habeas trial court found that "Attorney Goldberg spent considerable time cross-examining Womble to show that he presently disavowed his prior identification of the petitioner and that he was now telling the truth in court" when he testified "he could not identify the petitioner as the person who shot the victim." *Id.* at *8-9. Satisfying the first prong of the *Strickland* standard, the court concluded "it was reasonable for Attorney Goldberg to conclude that it was not in the petitioner's interest to undermine Womble's credibility on other issues."  *Id.* at *9. In regard to the second prong of the *Strickland* standard, the court did not expressly find the petitioner was not prejudiced by Attorney Goldberg's failure to cross-examine Womble; however, such a finding was implied when the

court stated "it [was] unclear what advantage the petitioner would have gained by cross-examination of" the issue of the caliber of gun Womble heard. *Id.* at *8. After careful review, the court concludes that the determinations of the state court regarding the level of performance by trial counsel in the cross-examinations of the state's witnesses, and the absence of prejudice resulting from the alleged improper cross-examinations, are not an unreasonable application of the *Strickland* standard. Accordingly, the claim that trial counsel was ineffective because she failed to reasonably cross-examine the state's witnesses is denied.

## 2. Failure to Call a Witness

The petitioner next claimed in his state habeas petition that trial counsel improperly failed to call a witness, Keith Bland, on petitioner's behalf. According to the petitioner, "Bland would have testified that Womble told him that he never actually saw the shooting take place and that he never saw the shooter." *Id.* at *9. The petitioner testified at the state habeas proceeding that he had advised Attorney Goldberg that she should speak with Bland. *Id.* The Connecticut Superior Court also found this claim to be without merit. Attorney Goldberg testified at the habeas proceeding "that she was never told by the petitioner to interview Bland and that she had never heard the name before." *Id.* The state habeas court found Attorney Goldberg "to be more credible on this issue and finds that she had no knowledge that Bland was a potential witness on this issue." *Id.* The trial court's finding that Attorney Goldberg had no knowledge of Bland as a potential witness precludes any finding that Attorney Goldberg's performance was deficient as to this claim. Accordingly, the claim that trial counsel was ineffective because she failed to call a witness on the petitioner's behalf is denied.

### 3.  Failure to Test Victim's Clothing

The petitioner next claimed in his state habeas petition that trial counsel improperly failed to test the victim's clothing for the presence of beer.  In Womble's sworn statement, he indicated that the petitioner "poured beer on [the victim] trying to entice him to fight." (Doc. # 41-19, at 25.) The petitioner argues that "[i]f the test came back positive showing that beer was not poured on the victim [Attorney Goldberg's] strategy in discrediting Womble's statement would have been greatly improved." (Doc. # 17-2, at 16.)

> With regard to this claim, the state habeas court found as follows:
>
> Attorney Goldberg did an effective job on cross-examination showing that Womble disavowed his written statement.  During cross-examination at trial, Womble stated that he did not see the petitioner at the murder scene, that he did not see who shot the victim, that he could not identify the petitioner as the person who shot the victim, that he identified the petitioner as the shooter because he had heard rumors to that effect and that he gave the police the written statement because he believed it was what they wanted to hear and he was afraid he would be arrested if he did not.  The impeachment of Womble's statement that the petitioner first poured beer on the victim pales in comparison to these contradictions and to Womble's repudiation of his identification of the petitioner as the shooter.  The petitioner has not shown that the failure to test the victim's clothes prejudiced the defense and that there is a reasonable probability that the result of the trial would have been different had Womble been impeached on his statement as to the beer.

*Newsome v. Tarascio*, 2000 Conn. Super. LEXIS 1222, at *10-11. In effect, the trial court determined that the petitioner had failed to satisfy the prejudice prong of the *Strickland* test, i.e. demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This Court agrees with that determination.

Even if it were assumed for the sake of argument that trial counsel's performance was deficient as to this issue, there has been no demonstration of "sufficient prejudice" as

required by *Strickland*.[2] *Id.* at 700. In his written statement, Womble simply stated that the petitioner "poured beer on [the victim] trying to entice him to fight." (Doc. # 41-19, at 25.) There is no indication in that statement of how much beer was poured or where on the victim it was poured, e.g., on his head, on his clothing. In considering the prejudice prong of the Strickland test, the Court also bears in mind that Womble's written statement, given the day after the shooting, was quite detailed and that certain of these details were corroborated by other evidence received at trial. Womble's written statement included the following details: the shooting occurred at "about 10:30, quarter to 11:00 p.m."; the incident took place "behind the bus, the food bus"; there was a fight involving, among others, the victim and Jared Fleming; there were two shots from a gun that "sounded like a .38"; and the victim was shot from "3 or 4 feet away." (Doc. # 41-19, at 25-26.) All of these details were corroborated by other evidence at the petitioner's trial.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly. Relief is available under § 2254 (d)(1) only if the state court's decision is objectively unreasonable." *Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (internal quotation marks and citation omitted). The trial court's conclusion that the petitioner failed to demonstrate sufficient prejudice resulting from trial counsel's failure to test the victim's clothing for the presence of beer, i.e., "that there is a reasonable probability that, but for counsel's unprofessional error[], the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, is not objectively unreasonable. For purposes of demonstrating prejudice resulting from a deficient performance by counsel, "[a]

---

[2] This Court is not finding that the performance of Attorney Goldberg was deficient. Since the petitioner must satisfy both prongs of the *Strickland* standard, however, the failure to demonstrate "sufficient prejudice" is fatal to the petitioner's claim in and of itself.

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Regardless of whether or not this Court would conclude in its independent judgment that the state habeas court decision applied the law correctly, this Court does not find that there is a reasonable probability that, but for the failure of trial counsel to test the victim's clothing for the presence of beer, the result of the proceeding would have been different. Consequently, the claim that trial counsel was ineffective because she failed to test the victim's clothing for the presence of beer is denied.

### 4. Failure to Argue Womble was the Perpetrator

Finally, the petitioner claimed that Attorney Goldberg failed to argue to the jury that Womble shot the victim.  The state court credited Attorney Goldberg's testimony that "there was no evidence establishing that claim."  *Newsome v. Tarascio*, 2000 Conn. Super. LEXIS 1222, at *11. While the court did not explicitly state that Attorney Goldberg's performance was reasonable in light of the circumstances to satisfy the first prong of the *Strickland* standard, this prong clearly is satisfied by the court's finding that "[t]he petitioner's naked speculation that Womble was involved was insufficient to enable Attorney Goldberg to argue that Womble was culpable for the crime." *Id.* at *12. The court noted that third-party suspect evidence could not be introduced at trial unless it "directly connects the third party to the crime."  *Id.* at *11 (*quoting State v. Sauris*, 227 Conn. 389, 401 (1993)).  Since the court found that "[n]o evidence was offered at trial directly connecting Womble to the murder and none was offered by the petitioner at the habeas hearing," *id.* at *12, Attorney Goldberg could not have made the argument that the petitioner now claims she should have made at trial. Consequently, the claim that trial

counsel was ineffective because she failed to argue that Womble was the person who shot the victim is denied.

### V.  Conclusion

For the foregoing reasons, petitioner's amended petition for writ of habeas corpus **(doc. # 24)** is hereby  **DENIED**. Because the petitioner has failed to make a substantial showing of a denial of a constitutional right, a certificate of appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2).  The Clerk is directed to enter judgment for the respondent and close this case.

SO ORDERED this  6th    day of  December  2012 at Hartford, Connecticut.

_____/s/ DJS_____

Dominic J. Squatrito
United States District Judge